RYAN D. LAPIDUS (Bar No. 196838)
Email: ryan@lapiduslaw.com
DANIEL C. LAPIDUS (Bar No. 227170)
Email: dan@lapiduslaw.com
JIM D. BAUCH (Bar No. 199454)
Email: jim@lapiduslaw.com
LAPIDUS & LAPIDUS
A PROFESSIONAL LAW CORPORATION
177 SOUTH BEVERLY DRIVE
BEVERLY HILLS, CALIFORNIA 90212
TEL: 310-550-8700
FAX: 310-943-2471

Attorneys for Plaintiff
4 and 1 Nutrition, LLC

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

**CV12 - 00357 CBM(MANx)**

| | |
|---|---|
| 4 AND 1 NUTRITION, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> SUN BROTHERS, LLC, a Nevada limited liability company, <br><br> Defendants. | **CASE NO.:** <br><br> **COMPLAINT FOR:** <br><br> **(1)  BREACH OF CONTRACT;** <br><br> **(2)  MISAPPROPRIATION OF TRADE SECRETS (CIVIL CODE SEC. 3426 ET SEQ.);** <br><br> **(3)  UNFAIR COMPETITION (CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200);** <br><br> **(4)  UNJUST ENRICHMENT** <br><br> **DEMAND FOR TRIAL BY JURY** |

COMPLAINT - 1

1

## SUMMARY OF ACTION

2        1.      Plaintiff sells brown rice protein, related brown rice products, and
3   other related commodities associated with products comprised of rice protein as
4   its base component.  Defendant Sun Brothers, LLC ("Defendant") is a
5   manufacturer of various health related products.  The parties entered into a written
6   Sales and License Agreement (the "Agreement") whereby, among other terms,
7   Plaintiff agreed to license Defendant to use certain of Plaintiff's proprietary rice
8   protein formulas, and Defendant agreed to purchase the ingredients to this
9   formula exclusively from Plaintiff.  In breach of its contractual obligations,
10  Defendant has purchased ingredients from other suppliers.  In addition, Defendant
11  continues to use Plaintiff's proprietary trade secrets without authorization.

12

13

## THE PARTIES

14       2.      Plaintiff 4 and 1 Nutrition ("Plaintiff") is a Delaware limited liability
15  company with its principal place of business in Los Angeles, California.

16       3.      Sun Brothers, LLC is a Nevada limited liability company with its
17  principal place of business in Overton, Nevada.  At all relevant times, Sun
18  Brothers, LLC has done business as Sun Warrior, Raw Nature Boy, Sage
19  Brothers, and Hyperthrive, and all references herein to Sun Brothers, LLC or
20  Defendant shall include Sun Warrior, Raw Nature Boy, Sage Brothers, and
21  Hyperthrive.

22

23

## JURISDICTION AND VENUE

24       4.      Jurisdiction exists pursuant to 28 U.S.C. § 1332, as Plaintiff is a
25  Delaware corporation with its principal place of business in California, Defendant
26  is a Nevada limited liability company with its principal place of business in
27  Nevada, and the amount in controversy exceeds $75,000, exclusive of interest and
28  costs.

1       5.     Defendant has systematic and continuous contacts with this judicial

2   district and has purposefully availed itself of the rights and privileges of

3   conducting business in this judicial district.  A substantial part of the events

4   and/or omissions giving rise to the claims against Defendant occurred in this

5   judicial district.  Further, Defendant consented to jurisdiction and litigation in this

6   forum in the parties' written agreement.  Therefore, venue is proper and

7   assignment of this case to the Central District of California is appropriate pursuant

8   to 28 U.S.C. § 1391(b) and (c).

## GENERAL ALLEGATIONS

11       6.     Plaintiff sells brown rice protein, related brown rice products and

12   related commodities associated with products comprised of rice protein as its base

13   component.

14       7.     Plaintiff created a trade secreted brown rice protein formula using a

15   unique, proprietary and innovative method of processing brown rice to create

16   brown rice protein.  This formula was developed over a substantial period of time

17   and at great expense.

18       8.     The formula developed and created by Plaintiff has received

19   recognition as the best protein on the market.  At the 2008 Natural Products Expo,

20   Plaintiff's formula was named "Best Protein of the Year."

21       9.     To protect its customers, as well as to comply with applicable Food

22   and Drug Administration standards, Plaintiff employs rigorous testing and quality

23   control standards for its ingredients, and has earned a reputation for safety and

24   reliability.

25      10.    Defendant Sun Brothers, LLC is in the business of marketing various

26   health-related products, including brown rice protein products.

27      11.    In or about December 2009, Plaintiff and Defendant entered into an

28   agreement (the "Agreement") whereby, among other terms, Defendant agreed to

1   pay Plaintiff for the right to sell and promote products containing Plaintiff's trade
2   secreted and award-winning formulas. A true and correct copy of the Agreement,
3   excluding the schedule setting forth Plaintiff's proprietary formulas, is attached as
4   Exhibit A to this Complaint.

5       12.    Plaintiff provided Defendant with its products, marketing materials
6   and formulas pursuant to the Agreement and otherwise complied in full with its
7   contractual obligations.

8       13.    Paragraph 1 of the Agreement requires Defendant to "exclusively
9   purchase from [Plaintiff] all ingredients necessary for the production of the rice
10  protein formula. . . ."

11      14.    Defendant has admitted to Plaintiff that it purchased ingredients for
12  the production of the rice protein formula from suppliers other than Plaintiff, in
13  violation of the Agreement's exclusivity clause.

14      15.    Defendant has sold products containing third party ingredients to
15  Defendant's distributors and retailers, in this judicial district and elsewhere.

16

17                   **FIRST CAUSE OF ACTION**
18                   **BREACH OF WRITTEN CONTRACT**

19      16.    Plaintiff incorporates by reference herein paragraphs 1 through 15 of
20  its Complaint.

21      17.    Plaintiff and Defendant entered into the Agreement.

22      18.    Plaintiff has performed in all ways pursuant to the Agreement except
23  to the extent performance has been excused and/or prevented by Defendant.

24      19.    Defendant has breached the Agreement by purchasing ingredients
25  from suppliers other than Plaintiff.

26      20.    Defendant's actions and/or omissions as alleged herein, constitute
27  breaches of the Contract.

28

1     21.   As a direct and proximate result of Defendant's breaches of the

2 Contract, Plaintiff has been damaged in an amount according to proof at trial, but

3 no less than $200,000.

4

5 **SECOND CAUSE OF ACTION**

6 **MISAPPROPRIATION OF TRADE SECRETS**

7 **(CALIFORNIA CIVIL CODE SECTION 3426 ET SEQ.)**

8     22.   Plaintiff incorporates by reference herein paragraphs 1 through 21 of

9 its Complaint.

10     23.   Using a unique, proprietary and innovative method of processing

11 brown rice to create brown rice protein, Plaintiff created a trade secret formula.

12 This formula was developed over a substantial period of time and at great

13 expense. Availability to competitors of the foregoing information would provide

14 a significant competitive advantage and cause a significant loss to Plaintiff.

15     24.   Plaintiff's trade secrets and confidential information are not

16 generally known to the public or the industry and have been the subject of

17 reasonable efforts to maintain their secrecy, including restricting access to the

18 confidential information and requiring those to whom the information is disclosed

19 to acknowledge in writing their duty to keep the information confidential.

20     25.   Upon information and belief, Defendant has misappropriated

21 Plaintiff's trade secrets and proprietary information, by using Plaintiff's trade

22 secret and confidential information to manufacture products that directly compete

23 with lawfully licensed products containing Plaintiff's formula, giving Defendant

24 an economic advantage that they would not have had without the confidential

25 information. The acts of Defendant as alleged constitute misappropriation of

26 trade secrets, as defined in Civil Code Section 3426.1(b).

27

28

1    26.    As a proximate result of Defendant's acts of misappropriation and
2  use of Plaintiff's trade secrets, Plaintiff has lost profits and will continue to lose
3  profits until Defendant is enjoined from using Plaintiff's trade secrets.

4    27.    As an additional proximate result of Defendant's acts of
5  misappropriation and use of Plaintiff's trade secrets, Plaintiff is informed and
6  believes that Defendant has been unjustly enriched in an amount subject to proof
7  at trial.

8    28.    As an additional proximate result of Defendant's acts of
9  misappropriation, Plaintiff has sustained, and will continue to sustain, great and
10  irreparable injury in that Plaintiff will lose customers and good will.  Plaintiff has
11  no adequate remedy at law for these injuries.  Unless Defendant is restrained from
12  using the confidential and proprietary information in the future, Plaintiff will be
13  compelled to bring a multiplicity of suits to protect its interests.

14    29.    Upon information and belief, Defendant committed its acts of
15  misappropriation willfully and maliciously in that Defendant intended by its
16  conduct to drive Plaintiff out of business.  Defendant's conduct justifies an award
17  of exemplary damages under Civil Code Section 3426.3 and of attorneys' fees
18  under Civil Code Section 3426.4.

19
20                          **THIRD CAUSE OF ACTION**
21          **UNFAIR BUSINESS PRACTICES – CALIFORNIA BUSINESS &**
22                      **PROFESSIONS CODE § 17200**

23    30.    Plaintiff incorporates by reference herein paragraphs 1 through 29 of
24  its Complaint.

25    31.    Defendant has committed acts of unfair business practices, as defined
26  by Business and Professions Code Section 17200 et seq., by engaging in, among
27  other unfair practices, misappropriation of trade secrets.

28

---

COMPLAINT - 6

1    32.    These acts and practices violate Business and Professions Code
2    Section 17200 in that they are illegal, unfair and/or fraudulent business practices.

3    33.    The unlawful, unfair and/or fraudulent business practices as
4    described above, present a continuing threat to members of the public in that
5    Plaintiff and members of the general public have no other adequate remedy at law
6    to halt and remedy said practices and/or policy.

7    34.    As a direct and proximate result of the aforementioned acts,
8    Defendant received and continues to hold ill-gotten gains resulting from its unfair
9    business practices, which properly belong to Plaintiff.  Plaintiff, accordingly,
10   seeks restitution of all such gains.

11

12                          **FOURTH CAUSE OF ACTION**
13                            **UNJUST ENRICHMENT**

14   35.    Plaintiff incorporates by reference herein paragraphs 1 through 34 of
15   its Complaint.

16   36.    Defendant has received a monetary benefit above and beyond what it
17   is entitled to pursuant to the Agreement with Plaintiff and, also, a benefit based on
18   the labors and efforts of Plaintiff in reliance upon the Agreement.

19   37.    It would be unjust to allow the Defendant to retain these additional
20   monetary benefits that properly belong to Plaintiff.

21   38.    Accordingly, Defendant has received a benefit and unjustly retains it
22   at the expense of Plaintiff.

23   39.    Accordingly, Plaintiff seeks restitution of such unjust funds retained
24   by Defendant in an amount according to proof at trial and costs.

25

26                                **PRAYER**
27   Plaintiff prays for relief as follows:

28

1      1.   For the First Cause of Action: damages according to proof at trial, in an

2   amount no less than $200,000; prejudgment interest; costs of suit; and for such

3   other and further legal and equitable relief as the Court deems just and proper;

4      2.   For the Second Cause of Action:  compensatory damages for the actual

5   harm caused by Defendant's unlawful conduct, in an amount no less than

6   $200,000; an accounting of all profits derived by Defendant as a result of its

7   unlawful conduct; disgorgement of all such wrongfully obtained profits;

8   exemplary damages pursuant to Civil Code Section 3426.3; injunctive relief

9   pursuant to Civil Code Section 3426.2, including but not limited to the

10   following: an order that Defendant, its agents, servants and employees and all

11   persons acting in concert with them be restrained and enjoined preliminarily and

12   permanently from: (a) disclosing or using Plaintiff's trade secrets or confidential

13   or proprietary information; (b) unfairly competing with Plaintiff; (c) selling, or

14   attempting to sell, directly or indirectly, products substantially the same as or

15   identical to Plaintiff's product and formulas; and (d) selling, or attempting to

16   sell, directly or indirectly, products derived from Plaintiff's product and

17   formulas; recovery of Plaintiff's attorney's fees and costs as authorized by

18   statute; and for such other and further legal and equitable relief as the Court

19   deems just and proper;

20      3.   For the Third Cause of Action: a temporary restraining order,

21   preliminary and permanent injunction against Defendant halting its unlawful,

22   unfair and/or fraudulent business practices, pursuant to Business and Professions

23   Code Sections 17203 and 17535 and the equitable powers of this Court;

24   restitution to Plaintiff, on behalf of itself and the general public, of all funds

25   acquired by means of any act or practice declared by this Court to be unlawful or

26   fraudulent or to constitute unfair business practices pursuant to Business and

27   Professions Code Section 17203 and the equitable powers of this Court;

28   attorneys' fees pursuant to Code of Civil Procedure Section 1021.5 and Business

1   and Professions Code Section 17200 et seq.; costs of suit; prejudgment interest
2   on all amounts claimed as authorized by statute; and for such further relief as the
3   Court may order.

4        4.  For the Fourth Cause of Action: restitution of all unjust gains; costs of
5   suit; prejudgment interest on all amounts claimed as authorized by statute; and
6   for such other and further legal and equitable relief as the Court deems just and
7   proper.

8

9   DATED: January 13, 2012        LAPIDUS & LAPIDUS
10                                 A PROFESSIONAL LAW CORPORATION
11
12
13                                 RYAN D. LAPIDUS
                                   Attorneys for Plaintiff 4 and 1 Nutrition, LLC
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT - 9

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury of all issues which may be tried to a jury.

DATED: January 13 2012          LAPIDUS & LAPIDUS
                                A PROFESSIONAL LAW CORPORATION


                                _____
                                RYAN D. LAPIDUS
                                Attorneys for Plaintiff 4 and 1 Nutrition, LLC

# EXHIBIT A

## SALES and LICENSE AGREEMENT

THIS SALES and LICENSE AGREEMENT ( "Agreement"), dated as of _____ day of December, 2009, is made and entered into by and between 4 and 1 Nutrition, LLC, a Delaware limited liability company with a principal place of business at 12100 Wilshire Boulevard, Los Angeles, California 90025 (hereinafter "Supplier"), and Sun Brothers, LLC, an Nevada limited liability company with its principal place of business at 257 South Moapa Blvd., Overton, NV 89040 (hereinafter the "Company"). Each of Supplier and Company may sometimes be referred to herein as a "Party" and collectively as the "Parties."

### WITNESSETH

WHEREAS, Supplier sells brown rice protein, related brown rice products, and other related commodities associated with products comprised of rice protein as its base component;

WHEREAS, Company is in the business of manufacturing and marketing various health related products for wholesale and retail sale; and

WHEREAS, Company desires to purchase and Supplier desires to sell to Company certain ingredients.

NOW THEREFORE, in consideration of the promises and the mutual agreements contained herein, Supplier and Company, agree as follows:

**1. Agreement as to Ingredient Purchase.** For a period of two (2) years and six (6) months from the date of execution of this Agreement, Company shall exclusively purchase from Supplier all ingredients necessary for the production of the rice protein formula (hereinafter the "Ingredients"). Except for Oryzatein, as set forth below, Company shall make payment for the Ingredients ordered from Supplier in an amount equal to a thirty (30%) percent mark-up on Supplier's cost. Company acknowledges that Supplier may obtain certain products and Ingredients from third-parties and that a delay in delivery may occur beyond the reasonable control of Supplier. To ameliorate such delays, Company agrees each month to provide Supplier with reasonably developed forecasts of its Ingredients needs for the upcoming three (3) calendar months. In the event Supplier confirms in writing that it is not able to fulfill the requirements of a Company order request, Supplier shall have the right to select a replacement vendor for the Ingredients and will use best efforts to obtain such Ingredients at the same quality and price as currently purchasing.

For the first six (6) months of the Term, the Company shall have the right to purchase Oryzatein™ at rates set forth as follows:(i) o – 1 metric ton at $6.55 per kilo; (ii) 1 – 5 metric tons at $6.35 per kilo; (iii) 5-10 metric tons at $6.15 per kilo; and (iv) more than 10 metric tons at $5.95 per kilo. Following each six (6) calendar month period during the Term thereafter, the price per kilo for Oryzatein may be adjusted by Supplier, in its sole and absolute discretion, either upwards, not more than ten (10%) percent from the previous price or downwards not more than three (3%) percent than the previous price, based upon Suppliers costs and the market price, and to be reasonable and competitive with pricing extended by Supplier to other purchasers. The Company agrees that it will not sell Oryzatein in bulk to any third party company or distributor.

1

Within three (3) business days following Company's order of an Ingredient, Supplier shall provide confirmation to Company that the order has been received and shall provide Company with tracking numbers and related identifying information. Supplier shall provide to Company written evidence of all such orders placed, received, and shipped within a reasonable time following placement of any such order. The delivery requirements for Ingredients purchased and other related terms shall be reasonably negotiated by Supplier and Company at the time of the order. If there is a conflict between this Agreement and a purchase order for Ingredients, the terms of the purchase order shall govern as it may relate solely to the delivery of the Ingredients. Notwithstanding anything herein to the contrary, Supplier shall not be considered in default in the performance of any obligation hereunder to the extent that the performance is prevented or delayed by fire, flood, explosion, strike, war, insurrection, embargo, government requirement, civil or military authority, act of God, or any other event, occurrence or condition which is not caused, in whole or in part, by Supplier, and which is beyond the reasonable control of Supplier.

**2. Intentionally Left Blank**

**3. License.** Supplier hereby licenses to the Company, on a limited, non-exclusive, worldwide, revocable basis, for a period of ten (10) years (the "License") the following:

A) the Formulas, as they may be developed by 4and1 and set forth on Schedule A, as the same may be amended from time to time. For purposes of creating new Formulas and the development of new Products, the Parties agree that if such new Formulas utilize a rice protein/rice protein powder base, 4and1 shall be the sole owner of such new Formula(s); and

B) various marks owned and, as they may be developed by 4and1 and as set forth on Schedule B, as the same may be amended from time to time.

The Company hereby expressly acknowledges and agrees that any and all of the Formula(s), marks and other intellectual property which is the subject of this Section 3, and any derivatives therefrom are the exclusive property of Supplier or its parents, subsidiaries and affiliates, as the case may be, and that the Company does not have any rights, claims or interests in, or with respect to them. For purposes of clarification, a derivative of the Formula is any formula, that (a) is based on the licensed Formula and (b) rice protein makes up fifty (50%) percent or more of the key element.

Supplier acknowledges that it has no right, title and interest in and to any of Company's registered trademarks, with specific reference to the SunWarrior trademark.

The Parties agree that the License set forth herein shall be revocable under the following conditions: (i) if a petition under any foreign, state, or United States bankruptcy act, receivership statute, or the like, as now exists, or as may be amended, is filed by either Party; (ii) if such a petition is filed by any third-party against a Party and such petition or application is not resolved favorably by such Party within sixty (60) days; (iii) the breach or threatened breach of this Agreement by Company, as determined by Supplier in its sole discretion.

2

**4. Payment.** The Company shall pay for the Ingredients within ten (10) days of purchase by 4and1. In the case of the Oryzatein, Sun shall pay within five (5) days once the Oryzatein has cleared the regulatory process in the US; notwithstanding anything herein to the contrary, any melamine tests being conducted by 4and1 will not interfere with timely payment once the product is cleared by customs. All payments shall be made by wire transfer to the following account:

## WIRE TRANSFER INSTRUCTIONS

## 5. Representations and Warranties.

5.1  Company.  Company hereby represents, warrants and covenants that: (i) it is duly formed, validly existing and in good standing under the laws of the state of its formation; (ii) it has the requisite corporate power and authority to execute, deliver and the ability to perform this Agreement and its terms hereunder; and (iii) no conflict of interest has arisen, or will arise, as a result of Company's execution of this Agreement, any third-party or other agreement to which the Company may have entered.

5.2  Supplier.  Supplier represents warrants and covenants that: (i) it is duly formed, validly existing and in good standing under the laws of the state of its formation; (ii) it has the requisite corporate power and authority to execute, deliver and perform this Agreement and its terms hereunder and (iii) no conflict of interest has arisen, or will arise, as a result of Supplier's execution of this Agreement under any third-party agreement.

**6. Term.**     This Agreement shall be effective as of the last date written on the signature page and have a term of two (2) years and six (6) months (the "Initial Term"). The Agreement may be renewed for successive one (1) year periods (each, a "Renewal Term" and together with the Initial Term, the "Term") upon the mutual consent of the Parties.

Either Party may terminate this Agreement immediately in the event of the occurrence of one or more of the following: (i) if a petition under any foreign, state, or United States bankruptcy act, receivership statute, or the like, as now exists, or as may be amended, is filed by either Party; (ii) if such a petition is filed by any third-party against a Party and such petition or application is not resolved favorably by such Party within sixty (60) days or (iii) either Party materially breaches this Agreement. Termination of this Agreement shall be without prejudice to any other legal and equitable rights and remedies of the Parties.

The Parties acknowledge and agree that upon termination or expiration of this Agreement, Supplier shall solely and exclusively own the Formulas.

3

7.  **Relationship of the Parties.** This Agreement is an arm's length transaction of independent contractors. Nothing in this Agreement is intended nor shall it be construed as creating a joint venture, agency, partnership or employer/employee relationship, or any legal or equitable relationship other than that of independent contractor.

8. **Confidentiality.** The terms and obligations set forth in this Section 8 shall survive any termination or expiration of this Agreement. In performing its obligations hereunder, Company shall have access to and receive certain confidential and/or proprietary information about Supplier, its affiliates and clients including, without limitation, details related to the Ingredients and Formulas, and such other information and materials that Supplier considers confidential, trade secret and/or proprietary ("Confidential Information"). Neither Company, any third party manufacturer nor subcontractor hired by it, nor any of their employees or agents, successors or assigns, shall directly or indirectly use any of the Confidential Information for any purpose except in furtherance of their rights and obligations hereunder. Company agrees to not give, sell or in any way transfer, either directly or indirectly, Confidential Information to any third-party without the prior written approval of Supplier, except as may be required by law. Except as provided for in this Agreement, Company is prohibited from using Confidential Information, directly or indirectly, for its own benefit or gain. Company shall take all steps necessary to maintain the confidentiality of the Confidential Information in its possession, but in any event, no steps less than those Company uses to protect its own Confidential Information. Company hereby acknowledges the sensitive nature of the Confidential Information and agrees that to immediately notify Supplier of any such breach, whether actual or suspected. Company further agrees that is shall use is best efforts to recover any such lost or breached Confidential Information.

For purposes of this Agreement, the following shall not constitute Confidential Information: (i) information that is or becomes publicly known without violation of similar confidentiality obligations by the disclosing Party; (ii) information that is already known to Company without confidentiality obligations or restrictions at the time of its disclosure; (iii) information that, after its disclosure is made known to Company without restrictions by a third party having the right to do so.

If Company receives a subpoena or other administrative or judicial notice requesting the disclosure of Confidential Information, Company shall promptly notify Supplier and, if so requested, shall cooperate with 4and1 in resisting the disclosure. Subject to its obligations stated in the preceding sentence, Company shall be entitled to comply with any binding subpoena or other process to the extent required by law, but shall in doing so make every effort to secure the confidential treatment of any materials Sun is compelled to disclose.

9. **Miscellaneous.**

9.1. Applicable Law and Headings. This Agreement shall be construed in accordance with and shall be governed by the laws of the State of California applicable to agreements made and to be performed in California and shall be construed without regard to either conflicts of law or any presumption or any other rule requiring construction against the Party causing this Agreement to be drafted. The Parties consent to the jurisdiction of the federal courts of the State of California, County of Los Angeles for all matters pertaining to this Agreement. Should any matter requiring the intervention of the courts arise hereunder, but not qualify for federal court jurisdiction, the Parties agree and consent to the jurisdiction of the state courts of the State of California, County of Los Angeles. Headings are for reference and are not intended to affect the meaning of any term or condition of this Agreement.

4

9.2 Notices. All Notices and other communications required or permitted to be given under this Agreement shall be in writing and will be deemed to have been duly given on the date delivered by hand, by overnight courier service or by messenger, or upon delivery by registered or certified mail (return receipt requested) postage prepaid, to any Party at the following addresses:

For Supplier: 12100 Wilshire Boulevard, Los Angeles, California 90025
           Attention David Janow.
           With a copy to WRK Legal Services, at 315 East 65th Street #5A, New York, NY 10065,
           Attention Wayne R. Kaufman, Esq.

For Company: 257 South Moapa Blvd, Overton, NV 89040,
           Attention Brent Hauver.
           With a copy to Company at
           4900 North Ocean BLVD, UNIT # 216 Fort Lauderdale, FL 33308.
           Attention Nick Stern.

9.3 Entire Agreement. This Agreement contains the entire agreement between the Parties with respect to the subject matter set forth herein and supersedes, substitutes, replaces, and, except as otherwise set forth herein, overcomes any previous agreements between the Parties with respect solely to the subject matter hereof. This Agreement is not intended to, and does not, modify, excuse, condition, or otherwise alter the Settlement Agreement or the rights and obligations contained therein. Nothing in this Agreement is intended to nor shall prohibit Supplier from enforcing its rights under the Settlement Agreement, including but not limited to the entry of judgment and injunctive relief.

9.4 Amendments and Waivers. No modification to this Agreement nor any failure or delay in enforcing any term, shall be construed as a waiver of such term unless explicitly so stated in writing. No provision of this Agreement may be amended or waived, unless such amendment or waiver is memorialized in writing and is signed by each Party hereto.

9.5 Assignment. Neither Party may assign this Agreement, including its rights and obligations hereunder, to any third party without the prior written consent of the other Party.

9.6 Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns.

9.7 Non-Compete / Non-Solicit. The Company hereby covenants and agrees that during the Term hereof, which is twelve (12) months, it will not, without the prior written consent of Supplier, directly or indirectly induce or attempt to induce any of the employees of Supplier to leave the employ of Supplier, or solicit the business of any client or customer of Supplier or any consultant to Supplier. In addition, during the Term hereof, Company shall not, engage in, or own or control an interest in, or act as principal, director or officer of, or consultant to, any firm or corporation (i) engaged in a venture or business substantially similar to that of the Supplier or (ii) which is in direct or indirect competition with the Supplier.

5

9.8 Severability and Survival. If any term or provision of this Agreement is found by a court of competent jurisdiction to be invalid, illegal, or otherwise unenforceable, such term or provision will be modified to the extent necessary in the court's opinion to render such term or provision enforceable. Further, such term or provision will not affect the other terms or provisions thereof or the whole of the Agreement. Company agrees that the License, Confidentiality and Title Sections of the Agreement shall survive the termination or expiration of this Agreement.

9.9 Waiver of Consequential Damages. In no event shall either Party hereto be liable to the other for consequential damages of any kind including, but not limited to loss of profits, loss by reason of shutdown, loss of product, or loss of use, arising from or in connection with this Agreement.

9.10 Title and Return of Work Product. All right, title and interest in and to works of authorship including, but not limited to, Formulas, drafts, workpapers, designs, plans, specifications, programs, computer output, valuations, estimates, reports, data, memoranda, findings, recommendations of every description and every innovation, conception, improvement, discovery or invention and any intellectual property rights associated therewith (collectively, the "Work Product") which are created, utilized or developed in connection with the Formulas, shall vest in and become the sole and exclusive property of Supplier. Company hereby irrevocably assigns all right, title, and interest in the Work Product to Supplier and shall, for no additional consideration, take any and all requisite steps and execute any and all such documents necessary to transfer the rights in the Work Product to Supplier.

Supplier hereby agrees that it shall not have any right in or to any customer database ("Database") created by Company, solely by Company's efforts and that Supplier shall return any Work Product related to the Database in accordance with this Section 9.10. In addition, Supplier further agrees that a final product manufactured by the Company, whether or not such final product utilizes the Formula, shall not be considered Work Product in connection with this Agreement.

Not later than ten (10) business days following the termination of this Agreement, each Party shall return all Work Product, Confidential Information and other documents due to be returned hereunder to the other Party and shall certify by signature of an officer of the returning Party the return or destruction, at the sole discretion of the receiving Party, of all such documents. The confidentiality obligations of this Agreement shall remain in full force and effect for as long as 4and1 maintains any of the Formulas as a trade secret or other proprietary intellectual property.

*[Signature Page Follows]*

6

**IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed by their officers duly authorized as of the date first written above.

4 AND 1 NUTRITION, LLC

_____          Date: _____
By:
Its:

_____          Date: _____
By:
Its:

SUN BROTHERS, LLC

_____          Date: Dec 17 2009
By: _A_ GR
Its:

_____          Date: Dec 17 2009
By:
Its:

7

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Consuelo B. Marshall and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV12- 357 CBM (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
   **312 N. Spring St., Rm. G-8**
   **Los Angeles, CA 90012**

[ ] **Southern Division**
   **411 West Fourth St., Rm. 1-053**
   **Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
   **3470 Twelfth St., Rm. 134**
   **Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

**ORIGINAL**

Name & Address:
Ryan D. Lapidus (Bar No. 196838)
Lapidus & Lapidus PLC
177 S. Beverly Dr.
Beverly Hills, CA 90212
310-550-8700

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 4 AND 1 NUTRITION, LLC, a Delaware limited liability company,<br><br>PLAINTIFF(S)<br>v.<br><br>SUN BROTHERS, LLC, a Nevada limited liability company,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV12- 00357** CBM (MANx)<br><br><br>**SUMMONS** |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Ryan D. Lapidus_____, whose address is _Lapidus & Lapidus PLC, 177 S. Beverly Drive, Beverly Hills CA 90212_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

JAN 1 3 2012

Dated: _____

Clerk, U.S. District Court

By: _____
          Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| 4 and 1 Nutrition, LLC, a Delaware limited liability company | Sun Brothers, LLC, a Nevada limited liability company |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Lapidus & Lapidus PLC<br>177 S. Beverly Dr.<br>Beverly Hills, CA 90212 310-550-8700 | |

| II. BASIS OF JURISDICTION (Place an X in one box only.) | III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only<br>(Place an X in one box for plaintiff and one for defendant.) | | | | | |
|---|---|---|---|---|---|---|
| | | PTF | DEF | | PTF | DEF |
| ☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| ☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| | Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☒ No        ☒ MONEY DEMANDED IN COMPLAINT: $ Over 200,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1331 (diversity) -- Breach of contract, misappropriation of trade secrets, unfair competition, unjust enrichment

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER<br>PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to | ☐ 710 Fair Labor Standards |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product | ☐ 371 Truth in Lending | Vacate Sentence | Act |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | Liability | ☐ 380 Other Personal | Habeas Corpus | ☐ 720 Labor/Mgmt. |
| ☐ 450 Commerce/ICC | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Property Damage | ☐ 530 General | Relations |
| Rates/etc. | ☐ 150 Recovery of | Slander | ☐ 385 Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. |
| ☐ 460 Deportation | Overpayment & | ☐ 330 Fed. Employers' | Product Liability | ☐ 540 Mandamus/ | Reporting & |
| ☐ 470 Racketeer Influenced | Enforcement of | Liability | BANKRUPTCY | Other | Disclosure Act |
| and Corrupt | Judgment | ☐ 340 Marine | ☐ 422 Appeal 28 USC | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product | 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted | Liability | ☐ 423 Withdrawal 28 | FORFEITURE / | Litigation |
| ☐ 490 Cable/Sat TV | Student Loan (Excl. | ☐ 350 Motor Vehicle | USC 157 | PENALTY | ☐ 791 Empl. Ret. Inc. |
| ☐ 810 Selective Service | Veterans) | ☐ 355 Motor Vehicle | CIVIL RIGHTS | ☐ 610 Agriculture | Security Act |
| ☐ 850 Securities/Commodities/ | ☐ 153 Recovery of | Product Liability | ☐ 441 Voting | ☐ 620 Other Food & | PROPERTY RIGHTS |
| Exchange | Overpayment of | ☐ 360 Other Personal | ☐ 442 Employment | Drug | ☐ 820 Copyrights |
| ☐ 875 Customer Challenge 12 | Veteran's Benefits | Injury | ☐ 443 Housing/Acco- | ☐ 625 Drug Related | ☐ 830 Patent |
| USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- | mmodations | Seizure of | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☒ 190 Other Contract | Med Malpractice | ☐ 444 Welfare | Property 21 USC | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product | ☐ 365 Personal Injury- | ☐ 445 American with | 881 | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization | Liability | Product Liability | Disabilities - | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal | Employment | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW |
| ☐ 893 Environmental Matters | REAL PROPERTY | Injury Product | ☐ 446 American with | ☐ 650 Airline Regs | (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | Liability | Disabilities - | ☐ 660 Occupational | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | IMMIGRATION | Other | Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization | ☐ 440 Other Civil | ☐ 690 Other | FEDERAL TAX SUITS |
| nation Under Equal | ☐ 240 Torts to Land | Application | Rights | | ☐ 870 Taxes (U.S. Plaintiff |
| Access to Justice | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus- | | | or Defendant) |
| ☐ 950 Constitutionality of | ☐ 290 All Other Real Property | Alien Detainee | | | ☐ 871 IRS-Third Party 26 |
| State Statutes | | ☐ 465 Other Immigration | | | USC 7609 |
| | | Actions | | | |

CV12-00357

FOR OFFICE USE ONLY:   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Nevada |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date January 13, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |