RYAN D. LAPIDUS (Bar No. 196838)
Email: ryan@lapiduslaw.com
DANIEL C. LAPIDUS (Bar No. 227170)
Email: dan@lapiduslaw.com
JIM D. BAUCH (Bar No. 199454)
Email: jim@lapiduslaw.com
LAPIDUS & LAPIDUS
A PROFESSIONAL LAW CORPORATION
177 SOUTH BEVERLY DRIVE
BEVERLY HILLS, CALIFORNIA 90212
TEL: 310-550-8700
FAX: 310-943-2471

Attorneys for Plaintiff
4 and 1 Nutrition, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 4 AND 1 NUTRITION, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SUN BROTHERS, LLC, a Nevada limited liability company,<br><br>Defendants. | CASE NO.: CV12-00357-GAF (MANx)<br><br>**DECLARATION OF DAVID JANOW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Notice of Motion and Motion for Partial Summary Judgment, Separate Statement of Undisputed Material Facts, and Declarations of Robert Bransky, Michael Shurgot, and Jim D. Bauch filed concurrently herewith; [proposed] Order lodged concurrently herewith.]<br><br>[Fed. R. Civ. P. 56]<br><br>Hearing<br>Date: December 24, 2012<br>Time: 9:30 a.m.<br>Courtroom 740 [Roybal Building]<br>Judge: Hon. Gary Allen Feess<br><br>Action Filed: January 13, 2012<br>Discovery Cut-Off: February 1, 2013<br>Trial Date: April 30, 2013 |

DECLARATION OF DAVID JANOW – 1

# DECLARATION OF DAVID JANOW

I, David Janow, hereby state and declare as follows:

1. I am the Chief Executive Officer of 4 and 1 Nutrition, LLC ("Plaintiff"), a Delaware limited liability company, the plaintiff in this action. I submit this declaration in support of Plaintiff's Motion for Partial Summary Judgment. I have personal knowledge of the facts contained herein and if called as a witness I could and would testify competently thereto.

2. On behalf of Plaintiff, I, along with Robert Bransky, were responsible for all negotiations and communications with defendant Sun Brothers, LLC ("Defendant") concerning Plaintiff's agreement to license Defendant the rights to use certain of Plaintiff's rice protein formula and Defendant's agreement to purchase exclusively from Plaintiff all ingredients necessary for the production of Plaintiff's rice protein formula. As the Chief Executive Officer, I am also the individual responsible for authorizing and approving any agreement made between Plaintiff and Defendant, including any amendments, modifications, and/or changes to such agreements, and/or any enforcement of any terms to such agreements and amendments.

3. In or about December 2009, Defendant and Plaintiff entered into a written Sales and License Agreement. Attached hereto as **Exhibit 1** is a true and correct copy of the Sales and License Agreement.

4. On January 14, 2012, Defendant and Plaintiff entered into an Amendment to the Sales and License Agreement. Attached hereto as **Exhibit 2** is a true and correct copy of the Amendment to the Sales and License Agreement.

5. At no time during the term of the Sales and License Agreement did Defendant provide Plaintiff with reasonably developed forecasts of its ingredients needs for the upcoming three months.

6. At no time during the term of the Sales and License Agreement did Plaintiff indicate, either in writing or orally, that it would be unable to fulfill any of Defendant's order requests nor did Plaintiff ever indicate that it would be unable to fulfill any of Defendant's order requests.

7. Defendant never asked Plaintiff for permission to obtain the ingredients necessary for the production of Plaintiff's rice protein formula from any other vendor, including, but not limited to, Natural Ops. Natural Ops is not an entity related to and/or otherwise associated with Plaintiff.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 8, 2012 at Los Angeles, California.

_____
DAVID JANOW

# EXHIBIT 1

## SALES and LICENSE AGREEMENT

THIS SALES and LICENSE AGREEMENT ( "Agreement"), dated as of _____ day of December, 2009, is made and entered into by and between 4 and 1 Nutrition, LLC, a Delaware limited liability company with a principal place of business at 12100 Wilshire Boulevard, Los Angeles, California 90025 (hereinafter "Supplier"), and Sun Brothers, LLC, an Nevada limited liability company with its principal place of business at 257 South Moapa Blvd., Overton, NV 89040 (hereinafter the "Company"). Each of Supplier and Company may sometimes be referred to herein as a "Party" and collectively as the "Parties."

## WITNESSETH

WHEREAS, Supplier sells brown rice protein, related brown rice products, and other related commodities associated with products comprised of rice protein as its base component;

WHEREAS, Company is in the business of manufacturing and marketing various health related products for wholesale and retail sale; and

WHEREAS, Company desires to purchase and Supplier desires to sell to Company certain ingredients.

NOW THEREFORE, in consideration of the promises and the mutual agreements contained herein, Supplier and Company, agree as follows:

**1. Agreement as to Ingredient Purchase.** For a period of two (2) years and six (6) months from the date of execution of this Agreement, Company shall exclusively purchase from Supplier all ingredients necessary for the production of the rice protein formula (hereinafter the "Ingredients"). Except for Oryzatein, as set forth below, Company shall make payment for the Ingredients ordered from Supplier in an amount equal to a thirty (30%) percent mark-up on Supplier's cost. Company acknowledges that Supplier may obtain certain products and Ingredients from third-parties and that a delay in delivery may occur beyond the reasonable control of Supplier. To ameliorate such delays, Company agrees each month to provide Supplier with reasonably developed forecasts of its Ingredients needs for the upcoming three (3) calendar months. In the event Supplier confirms in writing that it is not able to fulfill the requirements of a Company order request, Supplier shall have the right to select a replacement vendor for the Ingredients and will use best efforts to obtain such Ingredients at the same quality and price as currently purchasing.

For the first six (6) months of the Term, the Company shall have the right to purchase Oryzatein™ at rates set forth as follows:(i) o – 1 metric ton at $6.55 per kilo; (ii) 1 – 5 metric tons at $6.35 per kilo; (iii) 5-10 metric tons at $6.15 per kilo; and (iv) more than 10 metric tons at $5.95 per kilo. Following each six (6) calendar month period during the Term thereafter, the price per kilo for Oryzatein may be adjusted by Supplier, in its sole and absolute discretion, either upwards, not more than ten (10%) percent from the previous price or downwards not more than three (3%) percent than the previous price, based upon Suppliers costs and the market price, and to be reasonable and competitive with pricing extended by Supplier to other purchasers. The Company agrees that it will not sell Oryzatein in bulk to any third party company or distributor.

1

Exhibit 1
- 4 -

Within three (3) business days following Company's order of an Ingredient, Supplier shall provide confirmation to Company that the order has been received and shall provide Company with tracking numbers and related identifying information. Supplier shall provide to Company written evidence of all such orders placed, received, and shipped within a reasonable time following placement of any such order. The delivery requirements for Ingredients purchased and other related terms shall be reasonably negotiated by Supplier and Company at the time of the order. If there is a conflict between this Agreement and a purchase order for Ingredients, the terms of the purchase order shall govern as it may relate solely to the delivery of the Ingredients. Notwithstanding anything herein to the contrary, Supplier shall not be considered in default in the performance of any obligation hereunder to the extent that the performance is prevented or delayed by fire, flood, explosion, strike, war, insurrection, embargo, government requirement, civil or military authority, act of God, or any other event, occurrence or condition which is not caused, in whole or in part, by Supplier, and which is beyond the reasonable control of Supplier.

**2. Intentionally Left Blank**

**3. License.** Supplier hereby licenses to the Company, on a limited, non-exclusive, worldwide, revocable basis, for a period of ten (10) years (the "License") the following:

A) the Formulas, as they may be developed by 4and1 and set forth on Schedule A, as the same may be amended from time to time. For purposes of creating new Formulas and the development of new Products, the Parties agree that if such new Formulas utilize a rice protein/rice protein powder base, 4and1 shall be the sole owner of such new Formula(s); and

B) various marks owned and, as they may be developed by 4and1 and as set forth on Schedule B, as the same may be amended from time to time.

The Company hereby expressly acknowledges and agrees that any and all of the Formula(s), marks and other intellectual property which is the subject of this Section 3, and any derivatives therefrom are the exclusive property of Supplier or its parents, subsidiaries and affiliates, as the case may be, and that the Company does not have any rights, claims or interests in, or with respect to them. For purposes of clarification, a derivative of the Formula is any formula, that (a) is based on the licensed Formula and (b) rice protein makes up fifty (50%) percent or more of the key element.

Supplier acknowledges that it has no right, title and interest in and to any of Company's registered trademarks, with specific reference to the SunWarrior trademark.

The Parties agree that the License set forth herein shall be revocable under the following conditions: (i) if a petition under any foreign, state, or United States bankruptcy act, receivership statute, or the like, as now exists, or as may be amended, is filed by either Party; (ii) if such a petition is filed by any third-party against a Party and such petition or application is not resolved favorably by such Party within sixty (60) days; (iii) the breach or threatened breach of this Agreement by Company, as determined by Supplier in its sole discretion.

**4. Payment.** The Company shall pay for the Ingredients within ten (10) days of purchase by 4and1. In the case of the Oryzatein, Sun shall pay within five (5) days once the Oryzatein has cleared the regulatory process in the US; notwithstanding anything herein to the contrary, any melamine tests being conducted by 4and1 will not interfere with timely payment once the product is cleared by customs. All payments shall be made by wire transfer to the following account:

**WIRE TRANSFER INSTRUCTIONS**

**5. Representations and Warranties.**

<u>5.1 Company.</u> Company hereby represents, warrants and covenants that: (i) it is duly formed, validly existing and in good standing under the laws of the state of its formation; (ii) it has the requisite corporate power and authority to execute, deliver and the ability to perform this Agreement and its terms hereunder; and (iii) no conflict of interest has arisen, or will arise, as a result of Company's execution of this Agreement, any third-party or other agreement to which the Company may have entered.

<u>5.2 Supplier.</u> Supplier represents warrants and covenants that: (i) it is duly formed, validly existing and in good standing under the laws of the state of its formation; (ii) it has the requisite corporate power and authority to execute, deliver and perform this Agreement and its terms hereunder and (iii) no conflict of interest has arisen, or will arise, as a result of Supplier's execution of this Agreement under any third-party agreement.

**6. Term.**   This Agreement shall be effective as of the last date written on the signature page and have a term of two (2) years and six (6) months (the "Initial Term"). The Agreement may be renewed for successive one (1) year periods (each, a "Renewal Term" and together with the Initial Term, the "Term") upon the mutual consent of the Parties.

Either Party may terminate this Agreement immediately in the event of the occurrence of one or more of the following: (i) if a petition under any foreign, state, or United States bankruptcy act, receivership statute, or the like, as now exists, or as may be amended, is filed by either Party; (ii) if such a petition is filed by any third-party against a Party and such petition or application is not resolved favorably by such Party within sixty (60) days or (iii) either Party materially breaches this Agreement. Termination of this Agreement shall be without prejudice to any other legal and equitable rights and remedies of the Parties.

The Parties acknowledge and agree that upon termination or expiration of this Agreement, Supplier shall solely and exclusively own the Formulas.

3

**Exhibit 1**<br>- 6 -

7. **Relationship of the Parties.** This Agreement is an arm's length transaction of independent contractors. Nothing in this Agreement is intended nor shall it be construed as creating a joint venture, agency, partnership or employer/employee relationship, or any legal or equitable relationship other than that of independent contractor.

8. **Confidentiality.** The terms and obligations set forth in this Section 8 shall survive any termination or expiration of this Agreement. In performing its obligations hereunder, Company shall have access to and receive certain confidential and/or proprietary information about Supplier, its affiliates and clients including, without limitation, details related to the Ingredients and Formulas, and such other information and materials that Supplier considers confidential, trade secret and/or proprietary ("Confidential Information"). Neither Company, any third party manufacturer nor subcontractor hired by it, nor any of their employees or agents, successors or assigns, shall directly or indirectly use any of the Confidential Information for any purpose except in furtherance of their rights and obligations hereunder. Company agrees to not give, sell or in any way transfer, either directly or indirectly, Confidential Information to any third-party without the prior written approval of Supplier, except as may be required by law. Except as provided for in this Agreement, Company is prohibited from using Confidential Information, directly or indirectly, for its own benefit or gain. Company shall take all steps necessary to maintain the confidentiality of the Confidential Information in its possession, but in any event, no steps less than those Company uses to protect its own Confidential Information. Company hereby acknowledges the sensitive nature of the Confidential Information and agrees that to immediately notify Supplier of any such breach, whether actual or suspected. Company further agrees that is shall use is best efforts to recover any such lost or breached Confidential Information.

For purposes of this Agreement, the following shall not constitute Confidential Information: (i) information that is or becomes publicly known without violation of similar confidentiality obligations by the disclosing Party; (ii) information that is already known to Company without confidentiality obligations or restrictions at the time of its disclosure; (iii) information that, after its disclosure is made known to Company without restrictions by a third party having the right to do so.

If Company receives a subpoena or other administrative or judicial notice requesting the disclosure of Confidential Information, Company shall promptly notify Supplier and, if so requested, shall cooperate with 4and1 in resisting the disclosure. Subject to its obligations stated in the preceding sentence, Company shall be entitled to comply with any binding subpoena or other process to the extent required by law, but shall in doing so make every effort to secure the confidential treatment of any materials Sun is compelled to disclose.

9. **Miscellaneous.**

9.1. <u>Applicable Law and Headings.</u> This Agreement shall be construed in accordance with and shall be governed by the laws of the State of California applicable to agreements made and to be performed in California and shall be construed without regard to either conflicts of law or any presumption or any other rule requiring construction against the Party causing this Agreement to be drafted. The Parties consent to the jurisdiction of the federal courts of the State of California, County of Los Angeles for all matters pertaining to this Agreement. Should any matter requiring the intervention of the courts arise hereunder, but not qualify for federal court jurisdiction, the Parties agree and consent to the jurisdiction of the state courts of the State of California, County of Los Angeles. Headings are for reference and are not intended to affect the meaning of any term or condition of this Agreement.

4

Exhibit 1
- 7 -

9.2 Notices. All Notices and other communications required or permitted to be given under this Agreement shall be in writing and will be deemed to have been duly given on the date delivered by hand, by overnight courier service or by messenger, or upon delivery by registered or certified mail (return receipt requested) postage prepaid, to any Party at the following addresses:

For Supplier:  12100 Wilshire Boulevard, Los Angeles, California 90025
Attention David Janow.
With a copy to WRK Legal Services, at 315 East 65th Street #5A, New York, NY 10065,
Attention Wayne R. Kaufman, Esq.

For Company: 257 South Moapa Blvd, Overton, NV 89040,
Attention Brent Hauver.
With a copy to Company at
4900 North Ocean BLVD, UNIT # 216 Fort Lauderdale, FL 33308.
Attention Nick Stern.

9.3 Entire Agreement. This Agreement contains the entire agreement between the Parties with respect to the subject matter set forth herein and supersedes, substitutes, replaces, and, except as otherwise set forth herein, overcomes any previous agreements between the Parties with respect solely to the subject matter hereof. This Agreement is not intended to, and does not, modify, excuse, condition, or otherwise alter the Settlement Agreement or the rights and obligations contained therein. Nothing in this Agreement is intended to nor shall prohibit Supplier from enforcing its rights under the Settlement Agreement, including but not limited to the entry of judgment and injunctive relief.

9.4 Amendments and Waivers. No modification to this Agreement nor any failure or delay in enforcing any term, shall be construed as a waiver of such term unless explicitly so stated in writing. No provision of this Agreement may be amended or waived, unless such amendment or waiver is memorialized in writing and is signed by each Party hereto.

9.5 Assignment. Neither Party may assign this Agreement, including its rights and obligations hereunder, to any third party without the prior written consent of the other Party.

9.6 Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns.

9.7 Non-Compete / Non-Solicit. The Company hereby covenants and agrees that during the Term hereof, which is twelve (12) months, it will not, without the prior written consent of Supplier, directly or indirectly induce or attempt to induce any of the employees of Supplier to leave the employ of Supplier, or solicit the business of any client or customer of Supplier or any consultant to Supplier. In addition, during the Term hereof, Company shall not, engage in, or own or control an interest in, or act as principal, director or officer of, or consultant to, any firm or corporation (i) engaged in a venture or business substantially similar to that of the Supplier or (ii) which is in direct or indirect competition with the Supplier.

Exhibit 1
- 8 -

9.8 Severability and Survival. If any term or provision of this Agreement is found by a court of competent jurisdiction to be invalid, illegal, or otherwise unenforceable, such term or provision will be modified to the extent necessary in the court's opinion to render such term or provision enforceable. Further, such term or provision will not affect the other terms or provisions thereof or the whole of the Agreement. Company agrees that the License, Confidentiality and Title Sections of the Agreement shall survive the termination or expiration of this Agreement.

9.9 Waiver of Consequential Damages. In no event shall either Party hereto be liable to the other for consequential damages of any kind including, but not limited to loss of profits, loss by reason of shutdown, loss of product, or loss of use, arising from or in connection with this Agreement.

9.10 Title and Return of Work Product. All right, title and interest in and to works of authorship including, but not limited to, Formulas, drafts, workpapers, designs, plans, specifications, programs, computer output, valuations, estimates, reports, data, memoranda, findings, recommendations of every description and every innovation, conception, improvement, discovery or invention and any intellectual property rights associated therewith (collectively, the "Work Product") which are created, utilized or developed in connection with the Formulas, shall vest in and become the sole and exclusive property of Supplier. Company hereby irrevocably assigns all right, title, and interest in the Work Product to Supplier and shall, for no additional consideration, take any and all requisite steps and execute any and all such documents necessary to transfer the rights in the Work Product to Supplier.

Supplier hereby agrees that it shall not have any right in or to any customer database ("Database") created by Company, solely by Company's efforts and that Supplier shall return any Work Product related to the Database in accordance with this Section 9.10. In addition, Supplier further agrees that a final product manufactured by the Company, whether or not such final product utilizes the Formula, shall not be considered Work Product in connection with this Agreement.

Not later than ten (10) business days following the termination of this Agreement, each Party shall return all Work Product, Confidential Information and other documents due to be returned hereunder to the other Party and shall certify by signature of an officer of the returning Party the return or destruction, at the sole discretion of the receiving Party, of all such documents. The confidentiality obligations of this Agreement shall remain in full force and effect for as long as 4and1 maintains any of the Formulas as a trade secret or other proprietary intellectual property.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their officers duly authorized as of the date first written above.

4 AND 1 NUTRITION, LLC

_____  Date: _____
By:
Its:

_____  Date: _____
By:
Its:

SUN BROTHERS, LLC

____*signature*_____  Date: *Dec 17 2009*
By: *A GL*
Its:

____*signature*_____  Date: *Dec 17 2009*
By:
Its:

7

Exhibit 1
- 10 -

# EXHIBIT 2

## AMENDMENT TO SALES AND LICENSE AGREEMENT

This Amendment ("Amendment"), dated as of January 14, 2012, is made and entered into by and between 4 and 1 Nutrition, LLC, a Delaware limited liability company with a principal place of business at 12100 Wilshire Blvd., Los Angeles, California 90025 ("Supplier") and Sun Brothers, LLC, a Nevada limited liability company with its principal place of business at 201 South Moapa Blvd., Overton NV 89040 (the "Company"), and shall amend that certain Sales and License Agreement (the "Agreement") entered into by Supplier and Company in December 2009. Each of Supplier and Company may sometimes be referred to herein as a "Party" and collectively as the "Parties."

I.   **AMENDMENTS**

The Parties hereby agree that the Agreement is amended as follows:

1.   **Agreement as to Ingredient Purchase.**

The first sentence of this section is deleted in its entirety and replaced with the following:

"For a period of five (5) years from the date of execution of this Agreement, Company shall exclusively purchase from Supplier all ingredients necessary for the production of the rice protein formula (hereinafter the "Ingredients".

3.   **License.**

The first sentence of this section is deleted in its entirety and replaced with the following:

"Supplier hereby licenses to the Company, on a limited, non-exclusive, worldwide, revocable basis for a period of three (3) years (the "Initial License") and after the Initial License the Supplier will renegotiate a royalty based final license for the use of the Formulas (the "Final License", together with the Initial License, the "Licenses") the following:".

4.   **Payment.**

The first and second sentence of this section is deleted in its entirety and replaced with the following:

"A) Payment Process: The Company shall pay for the Ingredients prior to Supplier's purchase for all ingredients required for the Formula. In the case of Oryzatein, Sun shall pay upon receipt of the goods into their warehouse."

"B) Audit: During the Initial Term and the Term of this Agreement, and for six months following the expiration or termination of this Agreement, Supplier has the right to inspect, copy, and audit, upon two business days' written notice, any and all business records of the Company, whether in hard copy or electronic form, including but not limited to purchase orders, invoices, shipping records, emails, bank statements, financial statements, and accounting records. Company shall retain complete books and records at its place of business. The Supplier shall designate a third party auditor at its discretion, which costs shall be borne by the Company. "

6.   **Term**

The first and second sentence of this section is deleted in its entirety and replaced with the following:

"This Agreement shall be effective as of the last date written on the signature page and have a term of five (5) years (the "Initial Term"). Supplier shall have the right to unilaterally extend the Term for successive one year periods."

**9.2 Notices**

The "For Company:" shall be deleted in its entirety and replaced with the following: "

Attn: Russ Crosby
PO Box 718
201 South Moapa Blvd.
Overton, NV 89040

**9.11 Attorneys Fees**

The following Section 9.11 shall be added to the Agreement.

"9.11 Attorneys Fees

The prevailing party in any action or proceeding arising out of this Amendment or the Agreement shall recover its actual attorneys' fees and costs, including all expert witness fees. Any costs associated with this and any other Amendment shall be borne by the Company."

**9.12 No Circumvention**

The following Section 9.12 shall be added to the Agreement.

"9.12. Non Circumvention. The Parties agree not to circumvent the provisions of this Amendment or the Agreement, and agree not to deprive or attempt to deprive the other Party of any right or benefit under the Amendment or the Agreement through any act or omission."

**9.13 Indemnity**

The following Section 9.13 shall be added to the Agreement.

"9.13. Indemnity. Company shall indemnify, defend, and hold Supplier harmless, from any claims brought by any third party arising out of or related to any act, omission, and/or breach of this Agreement by Company.

**II. ENTIRE AGREEMENT**

This Amendment, together with the Agreement, contains all agreements, covenants, representations and warranties, express or implied, oral and written between the parties hereto concerning the subject matter hereof. No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any party to any other party concerning the subject matter hereof. All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants and warranties between the parties hereto concerning the subject mater hereof are merged herein. Except as specifically noted in this Amendment or the Agreement, this is an integrated agreement.

III. **REPRESENTATION OF AUTHORITY**

The persons executing this Amendment each represent and warrant that he or she is authorized to act on behalf of, and bind, the entity on whose behalf he or she has executed the Amendment.

IN WITNESS WHEREOF, the parties shall be deemed to have executed this Agreement as of the date first written above.

**4 and 1 Nutrition, LLC**

By: *David Tanow*
Its: *President*

**Sun Brothers, LLC**

By: Russ Crosby
Its: Operating Manager

By: Cody Roberts
Its: Operating Manager

Exhibit 2
- 13 -

3